Hunt, J.
Plaintiffs allege that they are the owners of a leasehold with privilege of purchase in certain lots in the city of Cincinnati • that in December, 1911, they applied for and obtained a permit from the commissioner of buildings of said city to erect a “one-story factory building” upon said lots, were proceeding to erect *524 said building, and have incurred expenses for labor and material therefor; that said commissioner and the director of public service threaten and are about to revoke said permit, to the irreparable loss of plaintiffs; wherefore they ask that defendants be restrained from revoking said permit. A temporary injunction was granted, and defendants now move for the dissolution of such injunction.
The evidence heard thereon discloses that the building commissioner is about to revoke said permit under Section 347 of the codified ordinances of Cincinnati, claiming that the building which plaintiffs are about to construct is to be used as a blacksmith shop, in violation of Section 452 of such codified ordinances, which provide that:
“No * * * blacksmith shop * * * shall be erected in any block or residence square, in which said block or residence square two-thirds (2-3) of the buildings thereon are used for residence purposes, without the written consent of the owners of two-thirds (2-3) of all the property in such block or square improved or used for residence purposes, that the property of such person, company or corporation may be used for any of the purposes above mentioned; said consent'shall be filed with the commissioner of buildings.”
Section 576 makes a -violation of -any of the provisions of the title of which Section 452 is a part, a misdemeanor punishable by fine.
The evidence shows that plaintiffs intend to use the building under construction for the purpose, not of casting or forging structural iron, but for the purpose of handling such iron, by preparing it for use, boring it for riveting and riveting it, and for the purpose of shaping and putting together architectural iron work. Riveting, boring, cutting and shaping machines operated by compressed air are expected to be used; also -a gas furnace for the purpose of heating rivets which are expected to be headed by pressure and not by concussion. Only one forge is expected to be used, and that only for repairing and sharpening tools. Plaintiffs’ -evidence is that the work to be done in the establishment is not such as can be called “blacksmith work, ’’ either in the method of work or in the incidents thereto; such as noise, smoke and dirt, *525 all of which under modern methods are claimed to be practically eliminated.
Defendants’ evidence is to some extent to the contrary, and that although the modern methods used will to a large extent eliminate smoke, noise and dirt, yet such work is such as is done to a less extent in a blacksmith shop.
Section 452 of the building code was passed by the council of the city of Cincinnati and not by a village council, and not so many years ago that it should be considered as applicable only to such a blacksmith shop as is and can be found in almost every country village. In the interpretation of such ordinance the evils intended to be cured must be considered. Can the court reasonably assume the realization of plaintiffs ’ expectation that the result of their intended use of modern methods will eliminate all the objectionable features of a blacksmith shop in a residence district, which features must be assumed to have been found by council to be detrimental to such residence neighborhood. If the interpretation of the ordinance in that respect was the only question in this case, the injunction asked for by the plaintiffs should be refused.
The prohibition as to the erection of a blacksmith shop under the conditions as to consent of a certain percentage of the owners of certain property, is a provision of an ordinance of a city and not of the statutes of the state. The power of the city to pass such ordinance must be found in the statutes, and the exercise of such power must not be unreasonable under existing and probable conditions.
The power of council to adopt the ordinance of which Section 452 is a part, is claimed under Sections 3636 and 3650 of the General Code.
Under Section 3636, council has power “to regulate the erection of buildings and the sanitary conditions thereof, the repair of, alteration in, and addition to, buildings and to provide for the erection of buildings and other structures, for the removal and repair of insecure buildings. ” * * *
For the purposes of this case it may be conceded that Section 3636, General Code, confers upon council the power to adopt the elaborate provisions of the building code, of which Section 452 is *526 a part, except that Section 452 prohibits the erection, not by reason of the material used or methods of construction, but by reason of the intended use of the structure. Manifestly, the use is not within the scope of Section 3636, except as such use would determine the character of material and methods of construction.
Section 3639 confers power upon council, “to regulate by ordinance the use, control, repair and maintenance of buildings used for human occupancy, or habitation, the number of occupants, and the mode .and manner of occupancy, for the purpose of insuring the healthful, safe and sanitary environment of the occupants thereof, to compel the owners of such buildings to alter, reconstruct or modify them, or any room, store, compartment or part thereof, for the purpose "of insuring the healthful, safe and sanitary environment of the occupants thereof, and to prohibit the use and occupancy of such buildings until such rules and regulations have been complied with.”
Such regulation as to “use” is by the terms of the section confined to “insuring the healthful, safe and sanitary environment of the occupants of the building.”
Council under Section 3646, and the board of health under Section 4413, have power sufficiently large to regulate use for the public health, but such powers are not now under consideration.
Section 3650, prior to the amendment of March 28, 1911, 102 B., 62, conferred upon council power “to prevent injury and .annoyance from anything dangerous, offensive or unwholesome.” By the amendment it has power to “causa any nuisance to be abated, * * * to prevent injury and annojmnee from the same.” * * * Manifestly, the power of council to pass the prohibitory ordinance under consideration can be ascribed only to Section 3650, and then only if a blacksmith shop is a nuisance, and for the purpose of preventing injury and annoyance therefrom.
Assuming that council has so found, and assuming that such finding is a reasonable finding, it might be noted that a blacksmith shop would be as much of a nuisance and annoyance for residents immediately adjoining it as to others more distant. Council has seen fit to prohibit the erection of such blacksmith shop, not where the owners of adjoining residences or all the *527 owners in the block fail to consent, but only where two-thirds of the owners fail to consent. The one-third not so consenting may be the owners of residence property mmediately adjoining the proposed shop. It might be further noted that a blacksmith shop established in a building already constructed, would be as much of a nuisance as a blacksmith shop established in a building constructed for that purpose.
Council, however, for the purpose of abating any nuisance and preventing injury and annoyance therefrom, has power to regulate the use of buildings or structures, but such power does not include any power to prohibit the erection of a structure lawful in construction and not in itself a nuisance.
The term to “erect a blacksmith shop” in view of such power and its limitation might be applicable to the putting in place, and erection of the appliances used in blacksmith work; i. <?., the use of the building rather than the erection of the building in which such work is done.
An ordinance, if possible, is to be given a valid construction. Imperfection in legislation is to be expected. An ordinance which only partially accomplishes a lawful purpose is not invalid, if what is accomplished is within a lawful power. The presumption of a valid legislative intent sometimes necessitates the disregard of the ordinary and technical significance of words.
Assuming that the section can be given a valid construction, the enforcement of the penal conditions of Section 576 would, to some extent at least, protect a residence block from the establishment and operation of any blacksmith shop not already established and in operation, without either the building commissioner being permitted to exceed his powers, or the court being compelled to speculate as to whether a building about to be constructed in full accordance with the building regulations as to material and method of construction, is to be used in violation of law.
The plaintiff applied for a permit to build a factory — a lawful structure under the -ordinance. If the building contemplated is in plan, material and manner of construction, considered in connection with the declared purpose to which it is to-be put, in accordance with the law, the duty of the building inspector to issue the *528 permit is mandatory and ministerial. If in the course of construction, the law is violated, such permit undoubtedly can be revoked, but the building commissioner has no right to assume that the law wll be violated in the subsequent use of a lawful structure. A permit to build is in no sense a permit to use. Use is an incident to ownership, subject, however, to lawful regulations.
Courts of equity, when their powers are- properly invoked, enjoin contemplated acts, when, after judicial investigation, such contemplated acts are found to be a nuisance, notwithstanding the commission of said acts is made a criminal offense (State v. Hobart, 8 N. P., 246); but an executive or administrative officer in the performance of a ministerial act, mandatory under certain structural conditions, has no right to attach other conditions or to assume, or find, that the law is to be thereafter violated in the use to which the structure may be put, and thereby interfere with the enjoyment of substantial property rights. If the required conditions exist, the building commissioner has no discretion in the issue of a permit. If, after the building is constructed, it is used unlawfully, or is about to be used unlawfully, there are adequate remedies for the prevention of such use or continued use.
It is claimed in this case that for the court to enjoin the building commissioner from revoking his permit already issued, would be contrary to the principles laid down in Predigested Food Co. v. McNeal, 1 N.P.(N.S.), 105; Clifton Springs Distilling Co. v. Brown, 8 N.P.(N.S.), 105, and similar cases.
Such cases are inapplicable to the present case for the reason that to enjoin would not be an interference with any discretionary powers of the building commissioner, nor any direct interference with a criminal prosecution of the plaintiffs for the violation of the ordinance, as a valid ordinance. It is true that if the commissioner is enjoined from revoking the permit, the plaintiffs can not be prosecuted for building without a permit, but such interference is a mere incident, in no way precluding the plaintiffs from being prosecuted for any violation of the ordinance under consideration in the use of the structure if they attempt to so violate it.
To construe the ordinance as prohibiting the erection of a building lawful in structure and material and not in itself a nuisance, *529 would be to declare it invalid, but it is not necessary to so construe it. It can be construed as prohibiting a specific use, and therefore for the purposes of this case may be assumed to be valid. So construed, the building commissioner has neither a right to refuse a permit to build such lawful structure, nor a right to revoke a permit to build already given, simply because a prohibited use of such structure is anticipated or contemplated.
The motion to dissolve the injunction is therefore overruled.